INTERNATIONAL ASSOCIATION OF MACHINISTS, AFL–CIO, and its Northwest District Lodge No. 143, et al., Appellants,

v.

NORTHWEST AIRLINES, INC., Appellee.

No. 16696.

United States Court of Appeals Eighth Circuit.

June 19, 1962.

Rehearing Denied July 18. 1962.

Solly Robins of Robins, Davis & Lyons, St. Paul, Minn., for appellant.

Henry Halladay, Minneapolis, Minn., for appellee; Bernard G. Heinzen and Dorsey, Owen, Barber, Marquart & Windhorst, Minneapolis, Minn., were with him on the brief.

Before SANBORN, VAN OOSTER-HOUT and MATTHES, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Defendants have appealed from an order entered by the District Court on January 27, 1961, granting plaintiff a preliminary injunction to prevent defendants from engaging in or inducing a strike or other concerted refusal on the part of plant maintenance mechanics and janitors to perform services at plaintiff's main base at Wold-Chamberlain Field in Hennepin County, Minnesota.

This appeal was originally submitted on February 28, 1961. Decision was deferred in the belief that the controversy between the parties might be settled through negotiation, adjustment or mediation.[1]

By per curiam opinion filed on April 5, 1962, we set this case for reargument

---

1. The Ninth Circuit in considering an appeal in Northwest Airlines, Inc. v. Transport Workers Union of America AFL-CIO (trial court opinion reported in D.C., 190 F.Supp. 495), wherein the trial court denied an injunction in a labor dispute created by a picket line established by the same flight engineers, noted that the President had appointed an emergency board with respect to the flight engineers' strike, and that the flight engineers had returned to work and had withdrawn the picket line, and in the appeal before it in case No. 17250 (not reported) by order entered March 6, 1961, set aside the submission of the appeal without

on May 7, 1962, and requested counsel to give us further information and assistance upon the following issues:

1. Whether a preliminary injunction is presently needed as an aid to enforce compliance with the adjustment procedure of the Railway Labor Act.

2. The steps taken to secure administrative relief and whether attempts to secure said relief are exhausted and whether an injunction may be granted in event the administrative remedies have not been exhausted.

3. Whether the injunction granted was too broad and was in excess of the jurisdiction and discretion of the court.

The plaintiff is an interstate and international common carrier by air, with its principal office and place of business at St. Paul, Minnesota. It is subject to the Railway Labor Act, 45 U.S.C.A. §§ 151–188. The defendants are International Association of Machinists, AFL–CIO (hereinafter called "IAM"), a labor union, its Northwest District Lodge No. 143, Arthur C. Pedersen, General Chairman of the Lodge, and Lowell J. Heinemann, its Assistant General Chairman, representatives of IAM and of the Plant Maintenance Mechanics and Janitors in the employ of the plaintiff.

IAM represents, for purposes of collective bargaining, various crafts or classes of plaintiff's employees, including Flight Engineers and Mechanics and Related Personnel. It deals with plaintiff through Northwest District Lodge No. 143. The plaintiff has a contract with its Flight Engineers and a separate contract with its Mechanics and Related Personnel, which include Boiler Operators and Janitors. Both contracts were negotiated by IAM through Northwest District Lodge No. 143. The latter contract is known as "the Mechanics' Agreement". The Mechanics' Agreement, in force at the time this action was commenced, January 18, 1961, contained a no-

strike clause reading as follows (Article XXV, paragraph (k)):

"(k) It is understood and agreed that the Company will not lock out any employee covered hereby, and the Union will not authorize or take part in any strike or picketing of Company premises during the life of this Agreement until the procedures for settling disputes as provided herein and as provided by the Railway Labor Act have been exhausted."

The Agreement also provided (Article II, paragraph (b)):

"(b) The Union agrees all employees covered by this Agreement shall be governed by Company rules, regulations, and orders issued by properly designated authorities of the Company which are not in conflict with the provisions of this Agreement, * * *."

The Agreement contained detailed machinery for the settlement of disputes arising out of grievances or the interpretation or application of the Agreement, with an ultimate appeal to a System Board of Adjustment.

The Flight Engineers employed by the plaintiff and represented by IAM and Northwest District Lodge No. 143 were in January 1961 on a strike against the plaintiff. It appears such strike grew out of a major labor dispute and that the strike occurred after the mediation remedies provided by the Air Carrier Amendments had been exhausted. The right of the Flight Engineers to strike is not here challenged.

Defendant Pedersen, ostensibly on behalf of the Flight Engineers in furtherance of their strike, on January 16, 1961, placed pickets at the plaintiff's facilities at Wold-Chamberlain Field. The picket line was maintained on a twenty-four hour basis, and was so placed that the Boiler Operators in coming to work would

---

prejudice to the right of either party to resubmit the appeal in event their rights are in fact affected by the holding of the appeal in abeyance. Our situation

is distinguishable in that in the Ninth Circuit case the injunction had been denied by the trial court, while in our case an injunction had been granted.

have to cross the picket line. There was no violence on the picket line.

While the Flight Engineers and the Boiler Operators had the same union representative, each group operated under a separate contract. The Flight Engineers' dispute was in no sense a problem of the Boiler Operators.

 The Boiler Operators refused to cross the picket line. Such refusal left only one licensed supervisor at the base to operate the extensive heating equipment. Heat in January is essential to prevent substantial damage to plaintiff's plant and to keep water lines necessary for fire prevention from freezing. It was beyond the capabilities of the single supervisor to operate the heating equipment continuously. Defendants claim that the Boiler Operators' refusal to cross the Flight Engineers' picket line was based upon the individual decision of each employee. Plaintiff claims and the court found such refusal to be concerted action induced by the defendants. There is substantial evidence to support such finding. We do not regard this finding to be controlling, since 29 U.S.C.A. § 104 proscribes injunctive relief:

"* * * in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute * * * from doing, whether singly or in concert, any of the following acts:

"(a) Ceasing or refusing to perform any work or to remain in any relation of employment; * * *."

Defendants as a basis for reversal urge that the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., prohibits the District Court from exercising jurisdiction through the use of the injunctive process. The Norris-LaGuardia Act does strictly limit the jurisdiction of courts to grant injunctive relief in labor disputes. In Marine Cooks & Stewards, AFL v. Panama Steamship Co., Ltd., 362 U.S.

365, 369, 80 S.Ct. 779, 4 L.Ed.2d 797, the Supreme Court, in speaking of the Norris-LaGuardia Act, states:

"That Act's language is broad. The language is broad because Congress was intent upon taking the federal courts out of the labor injunction business except in the very limited circumstances left open for federal jurisdiction under the Norris-LaGuardia Act. The history and background that led Congress to take this view have been adverted to in a number of prior opinions of this Court in which we refused to give the Act narrow interpretations that would have restored many labor dispute controversies to the courts."

To like effect see Order of Railroad Telegraphers v. Chicago & North Western R. Co., 362 U.S. 330, 335, 80 S.Ct. 761, 4 L.Ed.2d 774.

Title 29 U.S.C.A. § 108 provides:

"No restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration."

The question of whether the labor dispute here is minor or major may be of some significance in determining what administrative remedies are available.[2]

As pointed out in Elgin, Joliet & Eastern R. Co. v. Burley, 325 U.S. 711, 722–28, 65 S.Ct. 1282, 89 L.Ed. 1886, substantial differences in procedures exist in the handling of major and minor disputes. Major disputes are to be settled only by processes of non-compulsory adjustment through mediation and conciliation. Major disputes result when there is disagreement in the bargaining process for a new contract, while a minor dispute arises

2. Since, as hereinafter set out, we reach the conclusion that the dispute here is a minor dispute, we express no view as to whether a strike arising out of a major dispute may be enjoined. ·

over the interpretation of an existing collective bargaining agreement in a particular fact situation.

■ We agree with the trial court that the dispute here presented is a minor dispute. The contract interpretation issue presented is whether the Boiler Operators upon demand of their employers that they perform their duties are obligated under their existing contract to cross the picket line established by the Flight Engineers. The Boiler Operators are covered by the Mechanics and Related Personnel contract. Such contract contains a no-strike and no-lockout clause but does not deal specifically with the problem of whether the covered personnel are required to cross a picket line established in connection with a strike, not their own, in order to perform work.

The Railway Labor Act contemplates compulsory arbitration of minor disputes. That such is the case is clearly demonstrated by the opinion of the Supreme Court in Brotherhood of Railroad Trainmen v. Chicago River & Indiana R. Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622. In that case the Supreme Court discusses the Railway Labor Act and its legislative history. The Court states, 353 U.S. at page 39, 77 S.Ct. at page 640:

"This record is convincing that there was general understanding between both the supporters and the opponents of the 1934 amendment that the provisions dealing with the Adjustment Board were to be considered as compulsory arbitration in this limited field. Our reading of the Act is therefore confirmed, not rebutted, by the legislative history."

In the case just cited the railroad, before seeking the injunction, had filed grievances with the Adjustment Board. The court held the injunction was properly granted to enjoin the Union from striking "to defeat the jurisdiction of the Adjustment Board". The court held read in conjunction with the Railway that the Norris-LaGuardia Act must be

Labor Act so that the obvious purpose in the enactment of each is preserved. The court adhered to its former decisions holding that the specific provisions of the Railway Labor Act take precedence over the more general provisions of the Norris-LaGuardia Act and followed and applied the principle stated in Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 774, 72 S.Ct. 1022, 96 L. Ed. 1283, reading:

"'Our conclusion is that the District Court has jurisdiction and power to issue necessary injunctive orders [to enforce compliance with the requirements of the Railway Labor Act] notwithstanding the provisions of the Norris-LaGuardia Act.'" 353 U.S. 42, 77 S.Ct. 635, 1 L.Ed.2d 622.

In Manion v. Kansas City Terminal R. Co., 353 U.S. 927, 77 S.Ct. 706, 1 L.Ed. 2d 722, the Court in a per curiam opinion vacated the injunction, stating:

"The judgment of the Kansas City Court of Appeals of Missouri must be vacated in the light of our decision in Brotherhood of Railroad Trainmen v. Chicago River & Indiana R. Co., 353 U.S. 30, [77 S.Ct. 635, 1 L.Ed.2d 622] because the dispute here is not pending before the National Railroad Adjustment Board. The cause is remanded for further proceedings not inconsistent with this decision and without prejudice to the power of the Court of Appeals to reinstate its judgment if the dispute is submitted to the Adjustment Board by either party within a reasonable time."

In Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R. Co., 363 U.S. 528, 531, 80 S.Ct. 1326, 4 L.Ed. 2d 1379, the railroad, before seeking the preliminary injunction, had submitted the dispute to the National Adjustment Board. The Court, in upholding the injunction, states:

"This Court held in Brotherhood of Railroad Trainmen v. Chicago River & Ind. R. Co., 353 U.S. 30, [77 S.Ct. 635, 1 L.Ed.2d 622] that a Fed-

eral District Court may enjoin strikes arising out of 'minor disputes'—generally speaking, disputes relating to construction of a contract—when they have been properly submitted to the National Railroad Adjustment Board. We concluded that such an injunction does not fall within the prohibitions of the Noris-LaGuardia Act, 29 U.S.C. § 101 et seq., [29 U.S.C.A. § 101 et seq.] because of the superseding purpose of the Railway Labor Act to establish a system of compulsory arbitration for this type of dispute, a purpose which might be frustrated if strikes could not be enjoined during the consideration of such a dispute by the Board."

In Hilbert v. Pennsylvania R. Co., 7 Cir., 290 F.2d 881, cert. denied 368 U.S. 900, 82 S.Ct. 174, 7 L.Ed.2d 96 the court states:

"We think the decision in Manion means that a court should not permit the use of its injunctive powers in cases involving minor disputes where such disputes could have been submitted to the Adjustment Board." 290 F.2d 885–886.

See also Western Air Lines, Inc. v. Flight Engineers Intl. Ass'n, 194 F.Supp. 908, 910 (S.D.Cal.); Pennsylvania R. R. v. Transport Workers Union, 191 F.Supp. 915, 920–1 (E.D.Penna.); Rutland Ry. Corp. v. Brotherhood, 188 F.Supp. 721, 727 (D.Vermont).

While the cases herein cited largely are rail carrier cases, it is apparent from a reading of the Air Carrier Amendments, 45 U.S.C.A. §§ 181–188, adopted in 1936, and their legislative history, that Congress intended to apply the provisions relating to rail carriers to air carriers with the exception that the statutory National Railroad Adjustment Board provided for in § 153 is not carried over into the Air Carriers situation, but instead adjustment functions are vested by § 184 in system, group and regional boards of adjustment, with § 185 giving the National Mediation Board a right to establish a National Air Transport Adjustment Board.

 From the foregoing cases, it is apparent that the jurisdiction of federal courts to issue injunctions in minor labor dispute situations has been narrowly circumscribed by the Norris-LaGuardia Act. Title 29 U.S.C.A. §§ 104 and 108 clearly prohibit the issuance of an injunction in the circumstances before us unless the prohibition is removed by some other provision of the law. The only other provisions which may be applicable are those contained in the Railway Labor Act. The overriding purpose of the Railway Labor Act is that minor disputes in the transportation industry be settled by administrative procedures established in the Act without resort by any party to the dispute to self-help. Consequently, an accommodation of the Norris-LaGuardia Act and the Railway Labor Act requires that federal courts have power to enjoin conduct which would render nugatory the administrative process established by the Railway Labor Act. It is thus clear that injunctive jurisdiction of the federal courts in the situation here presented is ancillary to and an aid of the administrative procedure established under the Railway Labor Act for the settlement of this kind of dispute.

 If the party who seeks an injunction has available administrative steps which he has not pursued, it is evident that the injunction is not intended to serve the only purpose for which it may be granted. Unless the party seeking an injunction has exhausted the administrative remedies available to him, jurisdiction to grant the injunction is lacking by virtue of the Norris-LaGuardia Act. Manion v. Kansas City Terminal R. Co., supra; Hilbert v. Pennsylvania R. Co., supra; Butte, Anaconda & Pacific Ry. v. Brotherhood of Locomotive Firemen & Enginemen, 9 Cir., 268 F.2d 54, 60; Western Air Lines, Inc. v. Flight Engi-

neers International Ass'n (S.D.Cal.), 194 F.Supp. 908, 910.

Plaintiff in its brief does not claim that it has exhausted its administrative remedies but maintains that no such remedies were available to it, in that it had no power to refer the controversy to the Adjustment Board. It is true as plaintiff contends that the contract does provide for grievances by employees to be asserted at four levels of management, the last being the highest level, and that these grievances were not channeled through these various steps. The typical employee grievance situation did not here exist as the company did not discharge any of the Boiler Operators for the purported violation of the labor contract, at least until after the injunction was granted.[3]

█ It is established that the highest level of management participated in the negotiations to cause the Boiler Operators to cross the picket line to perform their duties and that management before filing of the injunction was aware of the dispute as to the interpretation of the contract. We believe that Article XIII, §§ (e) and (g) of the contract gave the plaintiff a right to submit the dispute to the Board of Adjustment established by the contract. Title 45 U.S.C.A. § 184 provides that disputes not adjusted between the parties at the top level may be referred by the parties or either of them to the appropriate adjustment board. In addition, § 183 provides that either party may invoke the services of the National Mediation Board in any of the following cases:

"(b) Any other dispute not referable to an adjustment board, as hereinafter provided, and not adjusted in conference between the parties, or where conferences are refused."

Plaintiff's claim that it is without administrative remedy lacks merit.

Since plaintiff had not exhausted its administrative remedies at the time it sought the injunction, the court under the Norris-LaGuardia Act was without jurisdiction to grant the injunction.

The defendants contend that the injunction granted was too broad even if the court had jurisdiction and discretion to issue an injunction. Since we hold that jurisdiction was lacking, we find it unnecessary to discuss this question. But see: Order of Railway Conductors of America v. Pitney, 326 U.S. 561, 565–566, 66 S.Ct. 322, 90 L.Ed. 318; Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R. Co., 363 U.S. 528, 533, 80 S.Ct. 1326, 4 L.Ed.2d 1379.

We conclude that the court erred in granting the injunction because such relief under the factual circumstances here presented, particularly in light of the plaintiff's failure to refer the minor dispute to the Adjustment Board, is barred by the Norris-LaGuardia Act.

Pursuant to the holding in Manion, supra, where an analogous factual situation is presented, the judgment of the District Court is vacated and this cause is remanded to the District Court without prejudice to the right of the District Court to grant such relief, if any, as may be necessary to protect the jurisdiction of the Adjustment Board to resolve the minor dispute involving the interpretation of the contract.

Reversed and remanded.

---

3. Appellants' reply brief sets out the payroll record which shows a notation of separation from payroll by resignation was entered on February 6, 1961, the reason therefor being that employees resigned from employment in accordance with notice issued by IAM as ordered by writ of injunction issued by the trial court. It was stated in oral argument that they were removed from the payroll, filed grievances, and took their case to the Adjustment Board, which Board now has such grievances under consideration.